```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re:                                  :

CHERYL M. TINE                          :    BK No. 11-12604
         Debtor                                  Chapter 7

- - - - - - - - - - - - - - - - -x
```

## DECISION FINDING STAY VIOLATION
## AND ORDER AWARDING ATTORNEY FEES AND DAMAGES

APPEARANCES:

    Americo M. Scungio, Esq.
    Attorney for Debtor
    167 Main Street
    Westerly, Rhode Island 02891

    Ann Marie Maccarone, Esq.
    James Ryan, Esq.
    Attorneys for RBS Citizens, N.A.
    2364 Post Road, Suite 100
    Warwick, Rhode Island 02886

**BEFORE ARTHUR N. VOTOLATO United States Bankruptcy Judge**

BK 11-12604

Heard on the Debtor's Motion to Adjudge RBS Citizens, National Association ("RBS" or "Bank") in Contempt and for Violation of § 362, for actions taken allegedly to preserve its secured interest in the Debtor's in Westerly, Rhode Island ("the property").

## TRAVEL

Cheryl M. Tine ("Debtor") filed this bankruptcy case on June 28, 2011. Prior to the filing of the petition, the Debtor was in default on her home mortgage, and when the parties' efforts at loss mitigation failed, a foreclosure sale was scheduled by RBS for June 30, 2011.[1] In addition to regular notice from the Court, the Bank was notified of the filing by letter from Debtor's counsel dated June 29, 2011, Debtor's Exhibit A, to Bank's counsel in the foreclosure sale. That sale did not go forward, either.

## BACKGROUND AND FACTS

While the Debtor was in default, but pre petition, the Bank hired various providers to do "property preservation" services concerning the Debtor's residence. Richard Albanese testified that his company, RPA, LLC, ("RPA"), was one of the entities hired by the Bank to perform this service, that he personally inspected the property during the Summer of 2011, and that he or his subcontractors had taken photographs and determined that the property was in fact occupied and not vacant. Albanese also testified, without fixing the

---

[1] An earlier foreclosure sale had been scheduled in December 2010, but that sale was also postponed.

1

BK 11-12604

time, that he had dispatched one of his sub-contractors, Nicole Rodgers, to the property to repeat the "property preservation work."[2] Rodgers testified that on September 18, 2011, she and another person, Frederick Collins, went to the Debtor's house, parked their truck in the driveway and walked around the house, took photographs, and where possible looked in the windows, and essentially re-determined that the property was not vacant. Rodgers also testified that while she and Collins were still on the property the Debtor arrived and parked her car behind the truck in the driveway while she (the Debtor) called police. Although police responded, they took no action other than to quell a shouting match, ordered the (by then emotionally out of control) Debtor to "stand aside," and ordered Rodgers and Collins to get in their truck and leave.

In addition, there is no evidence, prior to any of its agents' visits to the property, that the Bank ever gave prior notice of its intention to inspect the property, as required by ¶7 of the mortgage. Bank Ex. 2.

The Debtor testified as to her suspicions of similar intrusions by the Bank, in November 2010, and again in June 2011, to gain entry

---

[2] Based on the record, and notably the testimony of Mr. Albanese, it is clear that the Bank has several layers of "property preservation specialists" (collectively the "contractors") between itself and the entities which do the actual preservation work. I find as a fact and conclude as a matter of law that in this litigation, these contractors and subcontractors are agents of the Bank.

Case 1:11-bk-12604 Doc 55 Filed 05/04/12 Entered 05/04/12 16:02:27 Desc Main
Document    Page 4 of 7

BK 11-12604

into her house, as well as photographing the property from the yard while she was in the house.[3] The Debtor's assertions and description of these trespasses are fully substantiated by reports of the Westerly Police Department, Ex. B and C,[4] i.e., that entry into the Debtor's house had been attempted, and specifically verified by a voice message left by Mr. Albanese concerning the November 30, 2010 incident.[5]

So, on September 18, 2011, nearly two months post petition, and after it clearly had actual notice of the filing, the Bank was still instructing its agents to enter onto the Debtor's property, without notice or authorization, to perform so-called preservation services.[6] Accordingly, I find that the Bank's post-petition actions constitute an intentional continuation of its similar conduct in June, when photographs of the house were taken from the backyard, at least once while the Debtor was actually in the house.

---

[3] On the Bank's objection, the Court initially struck the Debtor's direct testimony regarding certain pre-petition events, beginning in November 2010. Then, on cross-examination, the Bank revisited the same events that it had successfully excluded in direct examination. On re-direct examination, for want of a better idea, I reversed my earlier ruling and allowed the Debtor to testify as to these events.

[4] Fed. R. Evid. 803(8)(c).

[5] Because of my earlier ruling that Mr. Albanese was an agent of the Bank, see footnote 2 above, this evidence is not hearsay. Fed. R. Evid. 801(d)(2).

[6] This is not a borderline scenario where inspection(s) were being conducted from a public vantage point, like the street.

## **DISCUSSION**

Upon the filing of a bankruptcy case, it is the creditor's responsibility to ensure that *no action* is taken against the debtor or his or her property. *Fleet Mortgage Group v. Kaneb*, 196 Fed.3d 265,269 (1st Cir. 1999). The automatic stay, 11 U.S.C. § 362(a)(3), forbids "any act to obtain possession of the estate or of property from the estate or to exercise control over property of the estate." This "language ... [is] ... comprehensive, wide-sweeping and direct." *In re Flynn*, 143 B.R. 798, 801 (Bankr. D.R.I. 1992). In light of all of the facts and circumstances in this case, I am clearly satisfied that the Bank's September 18 conduct violated the automatic stay. With the fact in mind that the Bank's actions were essentially a continuation of its pre-petition conduct, I also conclude that said conduct was "willful" under 11 U.S.C. § 362(k)(1). A "violation will be found 'willful' if the creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). Here, on September 18, 2011, the Bank had knowledge of the bankruptcy, Debtor's Ex. A, and based on its own inspections the Bank's agents knew that the property was not vacant prior to and when they entered onto the property. This conduct clearly was not "inadvertent," as Albanese ordered his sub-contractor (Rogers) to take photos, and Rogers admitted that she and Collins entered onto

BK 11-12604

the property at Albanese's direction.[7] The evidence is that they were all over the property.

Next comes the bad news for this and other overzealous creditors, i.e., once it is determined that a willful violation of the stay has occurred, § 362(k)(1) provides that the Debtor "*shall* recover actual damages, including costs and attorneys' fees." (Emphasis added.) Debtor's counsel has filed a fee application showing total time expended of 21.59 hours at an hourly rate of $195, totaling $4,345, (including costs of $135). The request includes preparation time and attendance at the hearing on January 25, 2012. The Court finds this amount to be reasonable and necessary, and allows the request as filed.

The final item to be addressed is the Debtor's request for damages. Debtor testified credibly that several pre-existing medical conditions, including epileptic seizures, depression, and PTSD worsened after the incident on September 18, 2011. Cheryl Tine, obviously fragile and hyper-sensitive, also testified that she was

---

[7] The Bank's reliance on *Mann v. Chase Manhattan Mortg. Corp*, No.00-192-T,2002 WL 32157516 (D.R.I.) for the proposition that photographic inspection of a debtor's property does not violate the automatic stay, is blatantly inapplicable and is uncomfortably close to an attempt to mislead the Court. First, the stay violation in *Mann* consisted of the addition of post-petition inspection charges to debtor's account, i.e., a bookkeeping entry. Second, Chase had properly given notice, as required under the mortgage, that it intended to perform the inspections. And finally, the inspections were merely "drive by['s]" that "did not involve entry upon the plaintiff [debtors'] property."

5

BK 11-12604

frightened and disturbed by the Bank's actions, that she was and continues to be in fear when alone in her own home, and experiences ongoing anxiety because of the Bank's actions. "Emotional distress is an actual injury for which a debtor may recover damages." *In re Rosa*, 313 B.R. 1,7 (Bankr. D. Mass. 2004)(citing *Fleet Mortgage Group v. Kaneb*, 196 F.3d 265,269 (1st Cir. 1999). The Debtor's already fragile condition was exacerbated by the Bank's conduct which, in the circumstances of this case, is clearly corroborated by the evidence.

While expert evidence is the normal standard by which medical causation is established, given the undisputed and compelling evidence in this proceeding, I am not inclined to disregard or reject the Debtor's lay testimony on the ground that medical evidence was not introduced to support testimony of which she has first-hand knowledge.

Based upon my consideration of the credible evidence and the applicable law, the Bank is ordered to pay the Debtor $15,000 in actual damages, and $4,345.05 in attorney's fees for violation of the automatic stay.

Enter.

Arthur N. Votolato
U.S. Bankruptcy Court

Entered on docket: 5/4/12

6